IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-01304-KLM

STEVEN BRACKETT, and
HEATHER BRACKETT,

    Plaintiffs,

v.

WALMART INC., a Delaware foreign corporation, registered to do business in Colorado, doing business as Walmart Supercenter #1252,

    Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Plaintiffs' **Opposed Motion for Sanctions for Failing to Institute a Litigation Hold and Spoliation of Evidence** [#41][1] (the "Motion"). Defendant filed a Response [#45] in opposition to the Motion [#41], and Plaintiffs filed a Reply [#46]. In short, Plaintiffs ask the Court for "an adverse inference jury instruction as the appropriate sanction for Defendant[']s willful destruction of evidence." *Motion* [#41] at 10. Based on the following, the Motion [#41] is **DENIED**.

**I. Background**

On July 25, 2018, Plaintiff Steven Brackett slipped and fell inside Defendant's store. Six days later, on July 31, 2018, his counsel sent a letter to the manager of the store and to Defendant through its registered agent in the State of Colorado. *Pl.'s Ex. 1*

---

[1] [#41] is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

[#41-1]. The letter put Defendant on notice of impending litigation and, Plaintiffs state, triggered Defendant's duty to preserve. *Motion* [#41] at 3. The letter directed Defendant to preserve: "[a]ll video and photographic evidence including but not limited to photographs; and security video from all vantage points, for 24 hours before and after the event, without limitation." *Pl.'s Ex. 1* [#41-1] at 2.

In response to a written discovery request, Defendant has provided only four hours of total video, comprised of one hour before and one hour after Plaintiff Steven Brackett's fall from two different camera angles. *Motion* [#41] at 4. This is apparently the policy and procedure Defendant utilizes at all of its stores nationwide. *Pl.'s Ex. 2* [#41-2]. Plaintiffs argue that this evidence is critical because "both before and after Plaintiff Steven Brackett's fall, the roof leaked like a sieve every time it rained." *Motion* [#41] at 5. Plaintiffs assert that, "on the day of the subject fall, the video would have shown the amount of water intrusion—*all over* Store # 1252 rather than only two cameras selected by the Defendant apparently pre-concluding that such limited footage was all that was relevant or germane to the instant dispute." *Id.* at 5-6 (emphasis in original). Plaintiffs further assert:

> *[E]xternal* camera footage would have shown the Plaintiff drive in, park, and walk into Store # 1252. When he did so, the rain event had not yet started. While in Store # 1252, the rain started in earnest and was leaking profusely when Plaintiff asked a store manager for directions to a specific product. This manager directed our client to an area with standing water which precipitated the fall and which is the subject matter of the instant matter. As Defendant failed to preserve the requested evidence, the jury will not be able to witness the Plaintiff inside the store prior to the rain; compare conditions both inside and outside the store as the weather conditions changed; and see with their own eyes that when the rain started, so did the leaks.

*Id.* at 6-7 (emphasis in original).

## II. Analysis

"Destruction of evidence, or spoliation, is a discovery offense . . . ." *Gates Rubber Co. v. Bando Chem. Indus. Ltd.,* 167 F.R.D. 90, 101 (D. Colo. 1996). To ensure that discovery as permitted under the Federal Rules of Civil Procedure is not rendered futile, "litigants have a duty to preserve documents that may be relevant to pending or imminent litigation." *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.,* 244 F.R.D. 614, 620 (D. Colo. 2007). The Court may impose sanctions for destruction or loss of evidence. *Id.* "A spoliation sanction is proper where (1) a party has a duty to preserve evidence because [he] knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of evidence." *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007) (citing *103 Investors I, L.P. v. Square D Co.,* 470 F.3d 985, 989 (10th Cir. 2006)). The movant has the burden of proving, by a preponderance of the evidence, that the opposing party failed to preserve evidence or destroyed it. *In re Krause*, 367 B.R. 740, 764 (D. Kan. 2007).

**A.    Relevance**

The Tenth Circuit Court of Appeals has held that alleged spoliated evidence must be relevant in order to demonstrate the prejudice necessary to justify imposition of a spoliation sanction. *Henning v. Union Pac. R.R. Co.*, 530 F.3d 1206, 1220 (10th Cir. 2008). Plaintiffs have the burden of proving that relevant evidence has been lost or destroyed by Defendant. *Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1251 (10th Cir. 2010). Thus, the Court begins its analysis with the issue of relevance. *See, e.g.*, *Lutalo v. Nat'l R.R. Passenger Corp.*, No. 11-cv-00974-REB-KLM, 2013 WL 1294125, at *2-5 (D. Colo. Mar. 28, 2013).

In their Motion, Plaintiffs rather summarily assume the lost video footage is relevant, stating that Defendant "*intentionally destroys relevant evidence* as a matter of policy/procedure," that "Defendant apparently pre-conclud[ed] that such limited footage was all that was relevant or germane to the instant dispute," that it is not up to "the spoliator" to decide what evidence is relevant to a dispute, and that Walmart cameras nationwide "often similarly and regularly fail to capture the rather relevant visual evidence." *Motion* [#41] at 4, 5-6, 9 (emphasis in original). In its Response, Defendant asserts that Plaintiff "fails to explain how 48 hours of security footage from every camera in the store is relevant to any issue the jury would have to determine." *Response* [#45] at 5. Defendant also notes that "[e]vidence regarding [Walmart's] post-fall accident investigation and retention of evidence is not relevant to Plaintiffs' premises liability case or Defendant's comparative negligence defense." *Id.* at 10 n.1. In their Reply, Plaintiffs concede, "[i]n fairness, not all of that time would be relevant to the instant matter," but argue that "[h]ad the images from those dozens of other cameras been preserved, [they] would have captured other leaks, other violations of Walmart's policies with respect to wet floors, and would have been relevant to Steve Brackett's negligence claims." *Reply* [#46] at 1-2; *see also id.* at 4 ("The relevance to Plaintiff's premises liability claim is plain – destruction of multiple depictions of this Walmart falling below the standard of care; and that this Walmart did so in a reckless, willful, and wanton manner.").

Pursuant to Fed. R. Civ. P. 26(b)(1), relevancy is broadly construed, and information is therefore generally obtainable if there is "any possibility" that the discovery sought may be relevant to the claim or defense of any party. *See, e.g.*, *Sheldon v. Vermonty*, 204 F.R.D. 679, 689-90 (D. Kan. 2001); *see also Cont'l Ill. Nat'l Bank & Trust*

*Co. of Chicago v. Caton*, 136 F.R.D. 682, 685 (D. Kan. 1991) (stating that a party resisting discovery based on relevancy grounds bears the burden of explaining how "each discovery request is irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, or burdensome"). Thus, relevance is not so narrowly construed as to limit a story to its final chapter, and neither party is entitled to make it impossible for all meaningful parts of the story to be told. Most broadly construed, the case is about what happened to Plaintiff Steven Brackett from the time he entered Defendant's premises and what happened on those premises which ultimately allegedly caused his fall. Although a close call under the particular circumstances of this case, the Court finds that video footage from other internal and external cameras could conceivably hold potentially relevant evidence—including evidence reasonably calculated to lead to the discovery of admissible evidence—pertaining to weather conditions and Plaintiff Steven Brackett's actions prior to his fall, including, perhaps, evidence supporting his credibility and the credibility of witnesses to that day's events, all of which could be relevant to both the negligence claim and the Premises Liability Act claim. *See, e.g.*, *New Jersey v. T.L.O.*, 469 U.S. 325, 345 (1985) (discussing the relevance of certain evidence to the defendant's credibility); *see also Carbajal v. Warner*, No. 10-cv-02862-REB-KLM, 2013 WL 1129429, at *3 (D. Colo. Mar.18, 2013) (stating that relevancy is broadly construed).

Accordingly, the Court finds that at least some of the lost video footage may have been relevant to Plaintiffs' claims.

**B.      Duty to Preserve**

A party is under a duty to preserve evidence when litigation is imminent. *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 620 (D. Colo. 2007). A

court may find that spoliation has occurred when a party either negligently or intentionally fails to produce relevant evidence in litigation. The failure may, of course, occur because evidence has been destroyed or lost. *Turner v. Pub. Serv. Co.*, 563 F.3d 1136, 1149 (10th Cir. 2009).

Here, the evidence demonstrates that Plaintiff Steven Brackett's fall occurred on July 25, 2018, and a mere six days later, on July 31, 2018, his counsel sent letters to Defendant's store manager and registered agent explicitly putting Defendant on notice of litigation. *Pls.' Ex. 1* [#41-1]. Defendant likely should have also been on notice *implicitly* on the very day of the accident by the mere fact that a customer had to be removed by ambulance after a fall occurred on the premises. Thus, the Court finds that Defendant had a clear duty to preserve relevant video footage at whatever time it was lost or destroyed. *See, e.g.*, *Puerto Rico Tel. Co., Inc. v. San Juan Cable LLC*, No. 11-2315(GAG/BJM), 2013 WL 5533711, at *1 (D.P.R. Oct. 7, 2013) (finding that the defendant's failure to preserve, locate and produce emails was spoliation). Plaintiffs have therefore sustained their burden of showing that relevant evidence was lost and/or destroyed in violation of its duty to preserve.

Accordingly, the Court finds that Defendant had a duty to preserve at least some of the lost video footage, to the extent it was relevant to Plaintiffs' claims.

**C.     Prejudice Resulting from Destruction of Relevant Evidence**

"The burden is on the aggrieved party to establish a reasonable possibility, based on concrete evidence rather than a fertile imagination, that access to the lost material would have produced evidence favorable to his cause." *Gates Rubber Co.,* 167 F.R.D. at 104. The degree of prejudice suffered by a party who experiences spoliation is

generally measured in terms of how the unavailability of the spoliated evidence affects proof of the party's claim or claims. *See, e.g., Lutalo,* 2013 WL 1294125, at *4.

In short, Plaintiffs argue prejudice because "the video would have shown the amount of water intrusion—*all over* Store # 1252," and because "the jury will not be able to witness the Plaintiff inside the store prior to the rain; compare conditions both inside and outside the store as the weather conditions changed; and see with their own eyes that when the rain started, so did the leaks." *Motion* [#41] at 5, 7. Defendant, on the other hand, asserts that this argument "overlooks what is clearly visible in the disclosed security footage from the Garden Center where Plaintiff Steven Brackett alleges he slipped and fell . . . ." *Response* [#45] at 4. Defendant points out:

> In the [preserved] Walmart security footage, Video 1 starts at timestamp 6:44:42 and shows the Garden Center absent of any rainwater. The formation of rainwater is first observed at 7:43:38, approximately seven minutes before the alleged incident. The Garden Center is then observed again absent of any rainwater by 8:26:15. Thus, the condition of the Garden Center is observed before, during, and after the alleged storm. Additionally, photographs taken of the incident area by Walmart associates following the alleged incident show the condition of the area where Plaintiff alleges he slipped and fell.

*Id.* at 5 (internal citations omitted). Defendant further demonstrates:

> Plaintiff Steven Brackett is captured on both security cameras before and after the claimed incident. Security footage shows Plaintiff enter the Garden Center from inside the store at 7:48:45 p.m. At 7:49:03 p.m., Plaintiff Steven Brackett looks at a group of Walmart associates, possibly addressing them. Plaintiff Steven Brackett then walks out of view of Video 1. However, on Video 2, which is angled toward the area of the alleged slip, Plaintiff Steven Brackett is observed entering the frame at 7:50:16 and exiting at 7:50:34. The alleged incident occurred in the back corner of the Garden Center, out of view of any security camera, at around 7:51:00 and was not observed by any Walmart associate. Later, at 8:04:20 EMTs are also observed in both security videos entering the Garden Center and walking toward Plaintiff. Next, Plaintiff is observed being transported by the EMTs on a stretcher at 8:08:45. Thus, the security footage captured Plaintiff before and after the alleged slip, captured Plaintiff potentially interacting with a Walmart

associate, and captured the condition of the Garden Center before, during, and after the rainstorm.

*Id.* at 5-6 (internal citations omitted). Plaintiffs do not explicitly refute these recitations.

Ultimately, the Court agrees with Defendant that Plaintiffs have failed to demonstrate prejudice resulting from the lost video footage. First, there is no indication that there was ever any *other* additional video footage showing Plaintiff Steven Brackett's actual fall or the location of his fall. *See Motion* [#41] at 9 (Plaintiffs concede that "the very camera which should have captured the Plaintiff's fall was mysteriously not working on the day/time of the fall"). Second, although Plaintiffs state that "the destroyed footage would have captured multiple instances of Walmart #1252 flouting Walmart's policies and procedures at multiple locations," *see Reply* [#46] at 4, Plaintiffs have not shown that this case is about those issues; rather, the case is generally about whether Defendant's policies and procedures caused Plaintiffs' injuries, not whether there were violations of other policies and procedures unrelated to this accident. *See generally Am. Compl.* [#21]. Third, Plaintiffs have not shown that the same information from the lost video footage is not accessible through other means, such as through witness statements, or that there is a dispute about any of the events Plaintiffs assert might have been seen on the lost footage, including, for example, that Plaintiff parked in the parking lot and walked into the store, the time when the rain started, or that the leaks started when the rain began. *See, e.g.*, *Motion* [#41] at 6-7. Fourth, Plaintiffs have cited no legal authority, and the Court is aware of none, demonstrating that any potentially relevant evidence from the lost video footage may be *material* to their claims. In short, it is hard to understand how Plaintiffs might be prejudiced by Defendant's video-retention policy under the circumstances of this specific case. Plaintiffs have simply not shown that, without the missing footage,

Plaintiffs' opportunity to establish their claims and/or contradict Defendant's defenses is diminished. *See, e.g.*, *Session v. Romero*, No. 14-cv-02406-PAB-KLM, 2019 WL 156952, at *5 (D. Colo. Jan. 10, 2019) (holding that prejudice requires a showing that the movant's claims or defenses are negatively affected).

Accordingly, the Court finds that Plaintiffs have not shown prejudice resulting from the destruction of relevant evidence.[2]

### III. Conclusion

For the reasons discussed above,

IT IS HEREBY **ORDERED** that the Motion [#41] is **DENIED**.

Dated: May 4, 2021

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge

---

[2] The Court therefore need not reach the issue of whether Defendant's video-retention policy constitutes bad faith.